UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SCOTTY POWELL and
REBECCA POWELL,

       Plaintiffs,

v.                                        Civil Action No. 2:11-00335

BANK OF AMERICA, N.A. d/b/a
BANK OF AMERICA HOME LOANS f/k/a
COUNTRYWIDE HOME LOANS, INC.,
THOMAS A. ZAMOW,
BAC HOME LOANS SERVICING, LP and
BANK OF NEW YORK MELLON, N.A.,

       Defendants.

MEMORANDUM OPINION AND ORDER

Pending is plaintiffs' motion to remand, filed May 31, 2011.  Also pending are the motion of defendant Thomas A. Zamow ("nondiverse defendant") to dismiss, filed September 8, 2011, and the motion of defendants Bank of America, N.A. ("Countrywide"), BAC Home Loans Servicing, LP ("BAC"), and The Bank of New York Mellon, N.A. ("Mellon") (collectively, "diverse defendants") to dismiss, filed September 14, 2011.

When, as here, a motion to remand and a Rule 12(b)(6) motion to dismiss are both made, it is ordinarily improper to resolve the Rule 12(b)(6) motion before deciding the motion to remand.  The question arising on the motion to remand as to

whether there has been a fraudulent joinder is a jurisdictional inquiry.  See Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3rd Cir. 1992); cf. Mayes v. Rapoport, 198 F.3d 457, 460 (4th 1999) (observing that the propriety of removal and fraudulent joinder are jurisdictional questions).

## I.  Background

This action arises out of a consumer credit transaction entered into by plaintiffs in connection with a deed of trust (sometimes, "mortgage") loan on residential property located in Boone County, West Virginia.  Plaintiffs Scotty and Rebecca Powell are residents of Boone County, West Virginia. Thomas A. Zamow is a resident of West Virginia.  (Second Am. Compl. ¶ 3).  Countrywide is a New York corporation with its principal place of business in California.  (Def. Countrywide, BAC, and Mellon's Ans. to Second Am. Compl. ¶ 4).  BAC is a Texas limited partnership with its principal place of business in Texas.  (Id. ¶ 5).  Mellon is a national bank with corporate

headquarters located at One Wall Street, New York, New York, 10286.  (Id. ¶ 6).[1]

Around October 2006, plaintiffs sought financing for the purchase of a new residence, which they offered to buy for $59,000.  (Second Am. Compl. ¶ 7).  Following acceptance of this offer, plaintiffs were referred to defendant Countrywide for financing.  (Id. ¶ 8).  Upon contacting Countrywide, plaintiffs applied for a loan over the phone and discussed its terms with a Countrywide agent.  (Id. ¶ 9).  Countrywide's agent represented to plaintiffs that their monthly payments would be approximately $548, and that the interest rate would not thereafter increase. (Id. ¶ 10).  Countrywide further represented to plaintiffs that if payments on the deed of trust were made for a year, plaintiffs could refinance the loan at a lower interest rate. (Id. ¶ 11).  The plaintiffs received no disclosures prior to the closing of the loan.  (Id. ¶ 12).

---

[1] Plaintiffs allege that defendant Mellon's principal place of business is 5730 Katella Avenue, Cypress, CA 90630.  Whether Mellon's principal place of business is in California or New York is irrelevant for the purposes of plaintiffs' motion to remand.

To the extent that specific allegations are made as to the nondiverse defendant, Thomas Zamow, an attorney, they are confined to the closing of the loan. (Id. ¶¶ 3, 13). The closing occurred on November 3, 2006, and was conducted by an employee of Zamow. (Id. ¶¶ 12, 13(a)). The complaint does not describe the relationship between Zamow and plaintiffs other than to indicate that he was the closing attorney. At the closing, which lasted only 10 to 15 minutes, plaintiffs were instructed where to sign and initial and were given "no meaningful opportunity" to understand the terms of the transaction. (Id. ¶ 13(a)-(b)). They state that the net purchase price was not accurately reflected on the closing documents, but do not describe the inaccuracy. (Id. ¶ 13(d)). Plaintiffs allege that they agreed to proceed with the loan transaction based on "representations made prior to and at closing regarding the payments and interest rate," but do not state what representations were made at closing. (Id. ¶ 13(e)). They merely allege that "[a]t the closing, there was no mention of an adjustable rate mortgage [ARM] or a potentially higher payment." (Id. ¶ 13(c)). Plaintiffs' allegations with respect to closing conclude with the further allegation that, contrary to representations made at and prior to closing, the loan

agreement called for an ARM loan with an interest rate ranging from 12.25% to over 19%; but the representations at closing are not stated. (Id. ¶ 45(b)).

After a year, plaintiffs sought a reduction of the interest rate, but were refused. (Id. ¶ 14). Around July 2008, the monthly loan service payments increased such that plaintiffs began to struggle to pay. (Id. ¶¶ 15-16).

In June or July 2008, plaintiffs contacted defendant BAC to request assistance managing the increased monthly payments. (Id. ¶ 17). After submitting an application for a loan modification, plaintiffs were informed by BAC that the plaintiffs would not go into default or foreclosure while the modification was being processed. (Id. ¶ 18). Meanwhile, BAC allegedly refused any offers of payments from plaintiffs. (Id. ¶ 18(b)). For several months thereafter, plaintiffs claim that they were given confusing and conflicting information regarding their obligations under the loan. (Id. ¶ 18(c)).

During the period following their contact with BAC, plaintiffs received several telephone calls from various BAC agents. In a call in late summer 2009, plaintiffs told BAC they

5

were not able to make increased payments. (Id. ¶ 20(a)). In response, a BAC agent allegedly said, "West Virginians like to have yard sales, so why don't you have a yard sale to make up the difference?" (Id. ¶ 20(b)). On a similar call during the same period, a BAC agent asked plaintiff Rebecca Powell, "Why did you buy the place if you can't make the payments?" (Id. ¶ 21(b)). Plaintiffs state that they were extremely offended and upset by these remarks. (Id. ¶¶ 20(c), 21(c)).

Around September 2009, BAC presented plaintiffs with a loan modification agreement. (Id. ¶ 22). The modification capitalized a claimed past due amount of $10,419.06, and reduced the interest rate from 12.25% to 11.25%. (Id. ¶ 23(a)). The modification provided for a "monthly payment of $628.11," as well as interest-only payments for 10 years. (Id. ¶ 23(b)). Plaintiffs agreed to the modification with the understanding that if they did not accept the agreement, plaintiffs' home would be foreclosed upon. (Id. ¶ 23(c)). The modification went into effect on December 1, 2009. (Id. ¶ 24(a)). Thereafter, plaintiffs began receiving statements demanding higher monthly payments of over $700. (Id. ¶ 24(b)). Plaintiffs contacted BAC about the reason for the higher payments in March 2010, and "insisted upon sending in a $648.11 payment" as provided for by

6

the loan modification.  (Id. ¶ 25(b)).[2]  On at least two occasions, once in or around February 2010 and again in March, a BAC agent "visited plaintiff's home and presented them with a note stating that it was 'Urgent! Urgent! Urgent! Urgent!'" that plaintiffs call BAC.  (Id. ¶ 26).

By letter dated February 18, 2010, plaintiffs requested a copy of their account history, information regarding the holder of the loan, and informed BAC that they were represented by counsel, to whom further communication was to be directed.  (Id. ¶ 27(a)).  BAC received plaintiffs' letter on February 24, 2010.  (Id. ¶ 27(b)).  In response to their letter, plaintiffs received an incomplete payment history and no information regarding the holder of the loan.  (Id. ¶ 27(c)-(d)).  Despite being informed that plaintiffs were represented by counsel, BAC contacted plaintiffs on at least the following four occasions seeking to collect on the loan:  on or about April 14, 2010, at approximately 8:45 p.m.; on or about April

---

[2] In paragraph 23(b) of the Second Amended Complaint, plaintiffs allege that the loan modification provided for a monthly payment of "$628.11."  However, in paragraph 25(b), they allege that the monthly payment as provided for by the loan modification was "$648.11."  The reason for the inconsistency is unclear.

24, 2010; on or about May 28, 2010, at approximately 8:02 p.m.; and on or about May 29, 2010.  (<u>Id.</u> ¶ 27(e)).[3]

On June 28, 2010, plaintiffs filed a complaint against defendants Countrywide and BAC, and against Hometown Real Estate, Inc., Rosanna Trent, and "John Doe Holder," in the Circuit Court of Boone County, West Virginia.  (Notice of Removal ¶ 1).  On April 13, 2011, plaintiffs filed an amended complaint ("First Amended Complaint") against defendants Countrywide, BAC, Zamow, and "John Doe Holder."  On May 12, 2011, Countrywide and BAC filed a timely notice of removal on diversity grounds.  Zamow filed his consent to removal on May 31, 2011.[4]  Plaintiffs filed their motion to remand on the same day.

_____

[3] Plaintiffs do not describe the method by which agents of defendant BAC allegedly contacted plaintiffs, though one may presume it was by telephone.

[4] In their memorandum of law in support of remand, plaintiffs argue that defendant Zamow failed to file a timely consent to removal, and that therefore remand is proper on this basis alone.  The record indicates that Mr. Zamow was served with the First Amended Complaint on April 28, 2011, which set the 30-day period to expire on May 28.  As noted, Mr. Zamow filed his consent on May 31.  Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), however, if the last day of the period specified in the rules is a Saturday, Sunday, or legal holiday,

(contin.)

On August 24, 2011, the court granted plaintiff's motion to amend their First Amended Complaint in which Bank of New York Mellon, N.A., was substituted as a defendant for "John Doe Holder."  ("Second Amended Complaint").

The Second Amended Complaint sets forth eight counts: Counts I and II allege fraud against all defendants; Count III alleges unconscionable contract against all defendants; Count IV alleges breach of contract against BAC; and Counts V through VIII allege illegal debt collection against BAC.  Plaintiffs have moved to remand, asserting that the nondiverse defendant, Mr. Zamow, defeats complete diversity and that this court thus lacks subject matter jurisdiction.  In opposition to remand, defendants claim that the nondiverse defendant was fraudulently joined solely for the purpose of defeating diversity jurisdiction.  Nondiverse defendant Zamow moved to dismiss all

---

the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Inasmuch as May 28 was a Saturday, May 29 a Sunday, and May 30 a legal holiday (Memorial Day), the last day for filing his consent to removal was May 31.  With the filing of Zamow's consent on May 31, plaintiffs' contention is without merit.

counts against him, and the diverse defendants also moved to dismiss on several grounds discussed below.[5]

## II.  Motion to Remand

### A.  Governing Standard

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court."  Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have original jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the

---

[5] The diverse defendants initially sought dismissal of Counts III and V through VIII on the basis of National Bank Act ("NBA") preemption.  (Diverse Def.'s Mot. 2).  In their reply brief, however, they withdrew their NBA preemption argument. (Diverse Def.'s Reply at 1 n. 2).  Inasmuch as the diverse defendants offer no argument for the dismissal of plaintiffs' Count III unconscionable contract claim, it is not addressed and thus survives diverse defendants' motion.

10

citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).  Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232–33)).

As Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. See

11

Hartley, 187 F.3d at 425. Hartley specifies that a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425-26 (citations omitted). In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Mayes, 198 F.3d at 464 (internal quotations omitted).

Inasmuch as defendants do not allege any outright fraud in the pleading of jurisdictional facts, the only question for fraudulent joinder purposes is whether plaintiffs have any possibility of recovery against the nondiverse defendant, Thomas Zamow. As to him, the Second Amended Complaint sets forth the two counts of fraud (Counts I and II) and a count for unconscionable contract (Count III). (Compl. ¶¶ 29-46). Those same three counts are alleged against all the other defendants

12

as well, but will not be dealt with as to them, the diverse defendants, until the motion to remand is resolved herein.

B.    Counts I and II: Fraud -- The Nondiverse Defendant

In order to establish a claim for fraud, plaintiffs must allege

> "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it."

Syl. pt. 2, <u>Jennings v. Farmers Mut. Ins. Co.</u>, 687 S.E.2d 574, 575 (W. Va. 2009) (quoting Syl. pt. 1, <u>Lengyel v. Lint</u>, 280 S.E.2d 66 (W. Va. 1981) (citation omitted)).  The Count II fraud allegations read as follows:

> 30. Defendants suppressed from the Plaintiffs material terms of the mortgage loan including an unaffordable adjustable rate mortgage.

> 31. Defendants misrepresented that Plaintiffs' payments and interest rate would not increase.

> 32. This misrepresentation was material and intentional and was made in order to induce Plaintiffs into the transaction at issue.

> 33. Plaintiffs reasonably relied on the misrepresentation of material terms and that the loan was originated consistent with prudent lending practices when entering into the transaction.

(Second Amend. Compl. ¶¶ 30-33).  As a result, plaintiffs allege
that they "were damaged by the Defendants' acts of fraud by
having entered into the transaction." (Id. ¶ 35).  The Count II
fraud allegations state:

> 37. Defendants misrepresented that Plaintiffs would be
> able to refinance after one year of making payments on
> their mortgage loan.
>
> 38. This misrepresentation was material and
> intentional and was made in order to induce Plaintiffs
> into to [sic] the transaction at issue.
>
> 39. Plaintiffs reasonably relied on the suppressions
> and misrepresentations of material terms and that the
> loan was originated consistent with prudent lending
> practices when entering into the transaction.
>
> 40. Plaintiffs were damaged by the Defendants' acts of
> fraud by having entered into the transaction.

(Id. ¶¶ 37-40).  Defendants respond by contending that no claim
for relief exists against the nondiverse defendant inasmuch as
no acts of Mr. Zamow or his alleged employee, the closing agent,
give rise to an actionable claim in fraud.  (Bank of America
Defs.'s Response at 2-5).

Plaintiffs fail to allege any specific act by Mr.
Zamow or his employee that would support a fraud claim, such as
identifying an act or misleading omission made by either that

was false.[6]  Indeed, the complaint alleges facts specifically indicating that it was an agent of defendant Countrywide -- not of Mr. Zamow -- who made the purported misrepresentations underlying the fraud claims in Counts I and II.  (See Compl. ¶¶ 10-11).[7]

As to representations by Zamow and his employee, the plaintiffs merely allege at paragraph 13(e) of each the First and Second Amended Complaints, as follows:  "Plaintiffs agreed to proceed with the loan transaction based on representations

---

[6] While it is of course true that omissions as well as acts may constitute fraud, such conduct must "involve a breach of legal duty, trust or confidence justly reposed . . . ."  Stanley v. Sewell Coal Co., 285 S.E.2d 679, 682 (W. Va. 1981).  To the extent plaintiffs' allegations may be construed as wrongful omissions on the part of the nondiverse defendant in Counts I and II, it is not evident how such omissions by the closing agent are actionable in the absence of a legal duty, trust, or confidence justly reposed.

[7] The allegations are as follows:

10.  Defendant Countrywide's loan agent represented to Plaintiffs that their monthly payments would be approximately $548 and the interest rate would never go up.

11.  Defendant Countrywide's loan agent also represented to Plaintiffs that if they made payments on their mortgage for a year, they could refinance at a lower interest rate after one year.

15

made prior to and at closing regarding the payments and interest rate." There is no specific allegation that Zamow or his employee misrepresented anything. In making that same equivocal allegation in their Second Amended Complaint filed on August 24, 2011, plaintiffs do so long after Zamow filed on May 31, 2011, his motion to dismiss the First Amended Complaint that had been filed in state court. In that motion, Zamow sought dismissal on various grounds including a failure to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Def. Zamow's First Motion to Dismiss at 1-2). The motion to dismiss was accompanied by a memorandum supporting at length the requirement of Rule 9(b) which specifies that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."[8] The plaintiffs then filed, as noted, the Second Amended Complaint without remedying the Rule 9(b) failure.

Zamow raised the same Rule 9(b) issue in his response on June 3, 2011, to plaintiff's motion to remand. (Def. Zamow's Response at 7-8). With respect to allegations of fraud, Rule

---

[8] Rule 9(b) of the West Virginia Rules of Civil Procedure similarly requires that the circumstances constituting fraud "shall" be alleged with particularity.

9(b) is generally interpreted as requiring a statement of not only the time and place and the identity of the maker but also the contents of the false representations.  See <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) ("[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" (quoting 5 Wright & Miller, <u>Federal Practice & Procedure</u> § 1297 (2d ed. 1990))); <u>Lasercomb America, Inc. v. Reynolds</u>, 911 F.2d 970, 980 (4th Cir. 1990) (citing Rule 9(b), stating that "a complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal. . . .").[9]  As set forth, <u>supra</u>, at pp. 4-5, misrepresentations as to Zamow or his employee are not alleged

---

[9] <u>See also</u> <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (Rule 9(b) standard not met where plaintiffs "simply 'lumped together' all of the defendants in their allegations of fraud"); <u>Vicom, Inc. v. Harbridge Merchant Servs., Inc.</u>, 20 F.3d 771, 778 (7th Cir. 1994) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal quotation omitted); <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

and even the representations allegedly made by him or his employee are not stated.

Plaintiffs having failed to allege fraud as to Zamow with the requisite particularity and having couched their allegations, to the extent misrepresentations are alleged, only in vague collective "Defendants" terms as to Zamow, the court finds that plaintiffs have no possibility of relief in fraud as against the nondiverse defendant.[10]  See <u>Cavallini v. State Farm Mut. Auto Ins.</u>, 44 F.3d 256, 260-61 (5th Cir. 1995) (finding fraudulent joinder when nondiverse defendant was not named individually in any counts of complaint, though was named in caption, introductory paragraph, and otherwise only referred to in allegations against collective "Defendants").

_____

[10] Indeed, the frank admissions of the plaintiffs at their depositions taken on December 7, 2011, belie the allegations aimed at Zamow in the Second Amended Complaint.  Plaintiffs neither spoke with Mr. Zamow or his employee about what their interest rate or mortgage payment would be, nor did they discuss their refinancing rights under the loan.  (Rebecca Powell Dep. 8-9; Scotty Powell Dep. 34-36).  To their knowledge, neither Mr. Zamow nor his employee concealed any loan terms from them. (Rebecca Powell Dep. 11-12, Scotty Powell Dep. 34-36). Plaintiffs also admitted that no terms of their loan were discussed with them at the closing conducted by Zamow's employee, including whether the loan was fixed or adjustable or whether they could refinance their loan after one year. (Rebecca Powell Dep. 15-16, Scotty Powell Dep. 34-36).

C.    Count III: Unconscionable Contract -- The Nondiverse
Defendant

        The count of unconscionable contract states as

follows:

     42. The Defendants have engaged in a pattern of
     predatory lending practices.

     43. The Plaintiffs are unsophisticated consumers with
     little understanding of financial matters.

     44. The Plaintiffs were induced into the loan through
     misrepresentations and suppressions of terms, and were
     not afforded a meaningful opportunity to understand
     the essential elements of the transaction.

     45. The loan agreement contained the following unfair
     terms, which amounted to an unfair surprise to the
     Plaintiffs:

        (a) excessive closing costs and fees, including
     but not limited to, bogus recording and document
     preparation fees;

        (b) an exploding ARM loan, which could adjust
     upward to over 19%, but which could never decrease
     below the initial rate of 12.25% that was not
     explained and that was contrary to representations
     made prior to and at closing.

     46. The agreement provided to the Plaintiffs was
     induced by unconscionable conduct and contains unfair
     terms, under all circumstances alleged, and therefore
     is unenforceable pursuant to section 46A-2-121 of the
     West Virginia Code.

(Compl. §§ 42-46).


        In this count, plaintiffs allege that the loan issued

to them was unconscionable in violation of West Virginia Code §

46A-2-121.   Section 46A-2-121 provides a remedy for consumers who have entered into consumer loans that contain unconscionable terms or were induced by unconscionable conduct.   It prescribes in relevant part:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
>
> > (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
> >
> > (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.

W. Va. Code § 46A-2-121.


     The West Virginia Supreme Court of Appeals recently gave comprehensive treatment to the doctrine of unconscionability, though the court left the principles expounded in prior cases largely intact.   See Brown v. Genesis Healthcare Corp., __ S.E.2d __, 2011 WL 2611327 (W. Va. June 29, 2011).   In determining unconscionability, a court "must focus on the relative positions of the parties, the adequacy of the bargaining position, and the meaningful alternatives available

to the plaintiff and the 'existence of unfair terms in the contract.'" Syl. pt. 14, id. (quoting Syl. pt. 4 Art's Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co. of W. Va., Inc., 413 S.E.2d 670, 671 (W. Va. 1991)).  This inquiry considers the circumstances under which the loan is made and is not limited to the terms of the contract itself.  See Syl. pt. 13, id. (quoting Syl. pt. 3, Troy Mining Corp. v. Itmann Coal Co., 346 S.E.2d 749, 750 (W. Va. 1986)).  More fundamentally,

> [a] contract term is unenforceable if it is both
> procedurally and substantively unconscionable.
> However, both need not be present to the same degree.
> Courts should apply a "sliding scale" in making this
> determination: the more substantively oppressive the
> contract term, the less evidence of procedural
> unconscionability is required to come to the
> conclusion that the clause is unenforceable, and vice
> versa.

Syl. pt. 20, id.


Like the fraud counts, plaintiffs' claim of unconscionable contract is asserted generally against all defendants.  The only allegations of the complaint that specifically refer to the nondiverse defendant in Count III are those that mention "closing" in paragraphs 13 and 45(b) as set forth, supra at pp. 4-4.  Neither there nor elsewhere is Zamow or his employee alleged to be a party to the underlying contract.  It is not alleged that Zamow breached any duties that

he might have owed to plaintiffs.  While the doctrine of
unconscionability is a defense against the enforcement of a
contract term, Zamow is not alleged to have been a party to any
contract with plaintiffs.  Accordingly, under the count claiming
unconscionable contract, no relief may be sought from him on
that ground.[11]

D.    Conclusion:  The Nondiverse Defendant

          Having found that plaintiffs have no possibility of
relief as against the nondiverse defendant under Counts I, II,
and III, the court finds that Mr. Zamow was fraudulently joined.
His motion to dismiss is granted and Mr. Zamow is dismissed from
this action.  Diversity jurisdiction thus lies.

---

          [11] There is some question as to whether Zamow should be
properly considered as part of the collective "Defendants"
referred to by plaintiffs in Count III, though defendants do not
advance the contention.  Regardless, that plaintiffs have no
possibility of relief against the nondiverse defendant in Count
III is plain enough.

### III.  Motion to Dismiss -- The Diverse Defendants

### A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do."  Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

23

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; Giarratano, 521 F.3d at 302.

As noted in Iqbal, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also S.C. Dep't of Health and Envtl. Control v. Commerce and Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313

F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

The diverse defendants -- Countrywide, BAC, and Mellon -- initially sought dismissal of all counts, relying heavily on National Bank Act preemption as the basis for dismissal of Counts III and V through VIII.  As noted above, however, the diverse defendants abandoned their preemption argument in the reply memorandum.  (<u>See</u> Diverse Def.'s Reply at 1 n. 2).  Accordingly, the diverse defendants seek dismissal of Counts I and II (all defendants -- fraud), Count IV (BAC -- breach of contract), and Count V (BAC -- illegal debt collection).

B.   Counts I and II: Fraud -- The Diverse Defendants

In support of dismissal, the diverse defendants first assert that plaintiffs' fraud claims (Counts I and II) are barred by the two-year statute of limitations, and that to the extent that plaintiffs invoke the discovery rule, it is inapplicable.  <u>See</u> Syl. pt. 3, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 262 (W. Va. 2009) (explaining discovery rule).

25

As an initial matter, the court observes that plaintiffs' Count I fraud claim seeks a remedy at law, namely, damages, while the Count II fraud claim seeks only equitable relief.  (See Second Amend. Compl. ¶¶ 35, 40).  With respect to a limitations challenge, the distinction in remedy sought is critical:

> "Where a suit based on fraud is not for damages but seeks to rescind a writing or impose a trust or other equitable relief, it is not a common law action for fraud but is equitable in nature.  Consequently, the doctrine of laches is applicable rather than any specific statute of limitations period."

Syl. pt. 7, id. at 258-59 (citation omitted) (quoting Syl. pt. 3, Laurie v. Thomas, 294 S.E.2d 78, 79 (W. Va. 1982)).  Inasmuch as the Count I fraud claim requests damages -- a legal remedy -- the two-year statute of limitations period set forth in West Virginia Code § 55-2-12 governs.  See Brown v. Cmty. Moving & Storage, Inc., 455 S.E.2d 545, 547 n. 3 (W. Va. 1995).  In contrast, the Count II request for "appropriate equitable relief" requires application of the doctrine of laches.  (Second Amend. Compl. ¶ 40).  See Syl. pt. 7, Dunn, 689 S.E.2d at 258-59; see also White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990) (laches is "properly relevant only where the claims presented may be characterized as equitable, rather than legal").

26

Laches and statute of limitations challenges are affirmative defenses.  <u>See</u> Fed. R. Civ. Pro. 8(c).  As such, these defenses are often not appropriate for disposition under Rule 12(b)(6).  <u>See</u> <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (noting a Rule 12(b)(6) challenge, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.").  An exception exists for the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ."  <u>Id.</u>  The exception is strictly construed, requiring that all "facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'"  <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)).

In Count I, plaintiffs allege that defendants "suppressed from the Plaintiffs material terms" of the loan, including an "adjustable rate mortgage" and further "misrepresented that Plaintiffs' payments and interest rate would not increase."  (Second Amend. Compl. ¶¶ 30-31).  Here, it does not clearly appear on the face of plaintiffs' complaint that the discovery rule does not apply to toll the two-year

27

statute of limitations.  See W. Va. Code § 55-2-12.  Plaintiffs allege that although the closing took place on November 3, 2006 -- over three years before filing suit on June 28, 2010 -- they did not discover that the loan terms had been "suppressed" until their monthly payment increased in July 2008.  (Id. ¶¶ 15-16). While defendants' arguments made with reference to the deed of trust and accompanying note may be persuasive at a later stage of the proceedings, the current procedural posture precludes the court from looking beyond the confines of plaintiffs' complaint. See Forst, 4 F.3d at 250.  Thus, the court cannot say at this juncture whether the discovery rule tolls the two-year limitations period as to Count I.

Count II is another matter.  As noted, this count asserts a fraud claim that requests only equitable relief. Consequently, the doctrine of laches, rather than the two-year statute of limitations, governs this claim.

"The elements of laches consist of (1) unreasonable delay and (2) prejudice."  Province v. Province, 473 S.E.2d 894, 904 (W. Va. 1996).  "Contrasted with the defense at law of the running of the statute of limitations, the controlling element of the equitable defense of laches is prejudice, rather than the

amount of time which has elapsed without asserting a known right or claim."  <u>Maynard v. Bd. of Edu. of Wayne Cnty.</u>, 357 S.E.2d 246, 253 (W. Va. 1987).  And so, "[m]ere delay will not bar relief in equity on the ground of laches.  'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'"  Syl. pt. 4, <u>State v. Morris</u>, 466 S.E.2d 827, 828 (W. Va. 1995) (quoting Syl. pt. 1, <u>State v. Abbot</u>, 418, S.E.2d 575, 576 (W. Va. 1992)).  "No rigid rule can be laid down as to what delay will constitute prejudice; every claim must depend upon its own circumstances."  <u>Province</u>, 473 S.E.2d at 904.[12]

---

[12] It has also been observed that "[a]lthough the doctrine of laches is not bound by any statute of limitations, the statute of limitations is one measure of whether a claim has become stale.  Laches and statutes of limitations are analogs." <u>Province</u>, 473 S.E.2d at 904 n. 21.  With respect to defendants' assertions, the maxim "equity follows law" is not without some force here.  The West Virginia Supreme Court of Appeals has explained that

> [w]ith respect to claims for equitable relief, a court of equity will normally invoke the maxim of equity which states that "equity follows the law" and will generally look first to what the statute of limitations would be for any analogous right or remedy at law.  However, a court of equity, in examining the delay in asserting a claim for equitable relief, is

(contin.)

In Count II, plaintiffs' fraud claim rests on the allegation that "Defendants misrepresented that Plaintiffs would be able to refinance after one year of making payments on their mortgage loan." (Second Amend. Compl. ¶ 37). The complaint also alleges that the Countrywide loan agent told plaintiffs that "they could refinance at a lower interest rate after one year" (id. ¶ 11), and, furthermore, that "[p]laintiffs inquired with Defendant about the promised reduction in interest rate after one year and Defendant refused." (Id. ¶ 14). Plaintiffs closed the loan on November 3, 2006. Accepting the unambiguous allegations as true, plaintiffs were plainly aware in November 2007 -- over two years before filing suit -- that defendants would not refinance their loan after one year of making payments. That Count II may be time-barred by the statute of limitations under these facts, as defendants contend, is not the question. Rather, it is whether <u>the face of the complaint</u>

---

   not bound by any analogous statute of limitations.  In
   a given case involving equitable relief which is
   alleged to be barred by laches, the analogy of the
   statute of limitations may be applied; or a longer
   period than that prescribed by the statute may be
   required; or a shorter time may be sufficient to bar
   the claim for equitable relief.

<u>Maynard v. Bd. of Educ. of Wayne Cnty.</u>, 357 S.E.2d 246 (W. Va. 1987).

clearly indicates that plaintiffs brought the claim with such
unreasonable delay that defendants were prejudiced under the
doctrine of laches.  See Forst, 4 F.3d at 250.  Strictly
construed, the face of the complaint does not manifest such
prejudicial delay.  Therefore, resolution of this affirmative
defense is also inappropriate at this stage of the proceedings.

Defendants advance several additional arguments aimed
at defeating plaintiffs' fraud claims.  As to their assertion of
the statute of frauds, defendants argue that "[c]laims based
upon a verbal promise or agreement related to real estate, such
as in regards to an alleged refinance, are prohibited."  (Def.'s
Mem. 15).  It has been long-recognized that the purpose of the
statute of frauds is "'to prevent the fraudulent enforcement of
unmade contracts,' rather than the legitimate enforcement of
contracts which were, in fact, made."  Holbrook v. Holbrook, 474
S.E.2d 900, 903-04 (W. Va. 1996) (quoting Timberlake v. Heflin,
379 S.E.2d 149, 153 (W. Va. 1989)).[13]  Inasmuch as plaintiffs'

---

[13] See also Gibson v. Stalnaker, 106 S.E. 243 (W. Va. 1921)
(citing Wright v. Pucket, 1872 WL 5207, 22 Gratt. 370 (Va. 1872)
("The statute of frauds was founded in wisdom and sound policy.
Its primary object was to prevent the setting up of pretended
agreements, and then supporting them by perjury.")); Heth v.
Wooldridge, 1828 WL 1043, 6 Rand. 605 (Va. 1828).

fraud claims sound in tort and they are not there seeking to enforce a contract term, the statute of frauds defense appears inapplicable.

Next, defendants briefly assert that the fraud claims must fail inasmuch as they are predicated on an alleged misrepresentation of a future event. While defendants are correct that "actionable fraud must ordinarily be predicated upon an intentional misrepresentation of a past or existing fact and not upon a misrepresentation as to a future occurrence," a claim for fraud will still lie if plaintiffs allege "the non-existence of intention to fulfill the promise at the time it was made." Croston v. Emax Oil Co., 464 S.E.2d 728, 732 (W. Va. 1995) (citing Janssen v. Carolina Lumber Co., 73 S.E.2d 12 (W. Va. 1952)). The specific allegations of fraud -- that defendants induced plaintiffs to agree to the loan by misrepresenting that the interest rate and payments would not increase, by suppressing from plaintiffs that the loan was an adjustable rate mortgage, and by misrepresenting that plaintiffs could refinance after one year -- are sufficient to permit the inference that defendants did not intend to fulfill any of those

terms or representations at the time made.  (Second Am. Compl.
¶¶ 30-32, 37-39).

        Finally, defendants assert that the fraud claims must
be dismissed inasmuch as plaintiffs failed to plead them with
particularity.  See Fed. R. of Civ. Pro. 9(b).  As earlier
noted, our court of appeals has explained that "the
'circumstances' required to be pled with particularity under
Rule 9(b) are 'the time, place, and contents of the false
representations, as well as the identity of the person making
the misrepresentation and what he obtained thereby.'"  Harrison
v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.
1999) (quoting 5 Wright & Miller, Federal Practice and Procedure
§ 1297 (2d. 1990)).  Even so, the court cautioned that "[a]
court should hesitate to dismiss a complaint under Rule 9(b) if
the court is satisfied (1) that the defendant has been made
aware of the particular circumstances for which she will have to
prepare a defense at trial, and (2) that plaintiff has
substantial prediscovery evidence of those facts."  Id.  Simply
put, the Counts I and II fraud claims as alleged against the
diverse defendants are sufficient to place them on notice of the
particular circumstances for which they will have to prepare a

defense at trial, and it appears that plaintiffs have sufficient prediscovery evidence of those facts.  <u>Id.</u>

Accordingly, defendants' motion to dismiss Counts I and II as to the diverse defendants is denied.

C.    Count IV: Breach of Contract -- BAC

In moving to dismiss Count IV, defendant BAC contends that plaintiffs failed to allege the breach of any contractual obligation by BAC inasmuch as BAC was under no obligation to enter into a loan modification with plaintiffs and had the express right to foreclose.  In response, plaintiffs maintain that although BAC was not required to grant him a loan modification, BAC's discretion under the contract was constrained by the implied contractual duty of good faith and fair dealing.  (Second Amend. Compl. ¶ 48).  The Powells further assert that BAC breached the implied duty by "engag[ing] in a practice of systematically reassuring delinquent borrowers that a loan modification will be provided," while

> nevertheless prolonging the presentation of a
> reasonable loan modification while allowing borrowers'
> indebtedness to mount, then presenting borrowers with
> a loan modification that is unwise and unfair to
> borrowers on terms favorable to Defendant, such as the
> instant case where Defendant presented Plaintiffs with
> a loan modification that was interest-only for ten

> years, precluding any ability of Plaintiffs to build
> any equity in their home after paying over $75,000.

(<u>Id.</u> ¶ 52).


The court has previously observed that West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." <u>Stand Energy Corp. v. Columbia Gas Transmission</u>, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting <u>Hoffmaster v. Guiffrida</u>, 630 F. Supp. 1289, 1291 (S.D. W. Va. 1986)). The court has also found, however, that the West Virginia Supreme Court of Appeals has "declined to recognize an independent claim for a breach of the common law duty of good faith," and has instead held that such a claim sounds in breach of contract. <u>Doyle v. Fleetwood Homes of Virginia</u>, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009) (citing <u>Highmark West Virginia, Inc. v. Jamie</u>, 655 S.E.2d 509, 514 (W. Va. 2007) ("it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim.")). By the same token, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the

contract." <u>Barn-Chestnut, Inc. v. CFM Dev. Corp.</u>, 457 S.E.2d 502, 509 (W. Va. 1995).

Plaintiffs couch their claim in breach of contract terms, asserting that BAC breached the contract by performing in a manner inconsistent with the implied duty of good faith. Inasmuch as plaintiffs seem to argue that breaching the implied covenant of good faith and fair dealing (a non-cognizable claim) necessarily constitutes breach of contract (a cognizable claim), this is just a roundabout way of asserting an independent claim for breach of the implied covenant. Nevertheless, the court will proceed to analyze plaintiffs' claim as it would a breach of contract claim.

The court strains to identify a claim for breach of contract in Count IV. The only allegation in Count IV that indicates an express breach of contract is that after entering into the loan modification, defendants "refus[ed] to honor the agreement providing for lower monthly payments." (Second Amend. Compl. ¶ 53(d)). The bulk of the Count IV allegations involve only the alleged breach of the covenant of good faith and fair dealing.

36

With respect to the specific allegations of bad faith and fair dealing, plaintiffs do not specify what "contract" was breached, nor do they point to any contractual provision violated by defendants.  The court concludes that plaintiffs must be referring either to the note supporting the loan to plaintiffs, or the deed of trust which secured the note, since these are the only contracts alleged to exist between the parties relevant to the allegations of bad faith and fair dealing.  After reviewing these documents, it is not apparent to the court that BAC breached either contract.[14]

The deed of trust gives defendants an unqualified right to foreclose in the event of default by the borrower. (See Def.'s Mem., Ex. A ¶ 22) ("If the default is not cured . . . Lender at its option may require immediate payment . . . and may invoke the power of sale and any other remedies permitted by Applicable Law.") (emphasis added).  Plaintiffs concede that neither contract requires defendants to pursue

---

[14] When ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).

alternative remedies before seeking foreclosure.  (See Second
Amend. Compl. ¶ 50) (stating that under the deed of trust,
"Defendant may engage in loss mitigation efforts . . . rather
than pursue foreclosure") (emphasis added)).

      Relying on Virginia Vermiculite, Ltd. v. W.R. Grace &
Co., 156 F.3d 535 (4th Cir. 1998), plaintiffs maintain that
BAC's right of foreclosure is qualified by a duty to act in good
faith.  Virginia Vermiculite concerned a contract between a
landowner and a mining company that granted the mining company
the right to mine the land in its "sole discretion."  156 F.3d
at 541.  The district court, applying Virginia law, held that
the mining company had no implicit contractual duty to use good
faith in exercising its discretion under the contract.  Id. at
541.  Our court of appeals reversed, holding that "it is a basic
principle of contract law in Virginia . . . that although the
duty of good faith does not prevent a party from exercising its
explicit contractual rights, a party may not exercise
contractual discretion in bad faith, even when such discretion
is vested solely in that party."  Id. at 542 (emphasis added).

      Regardless of whether BAC properly exercised "its
explicit contractual rights" or whether it abused its

"contractual discretion" by acting in bad faith, Virginia Vermiculite is inapplicable here because that case concerned Virginia rather than West Virginia law.  This distinction is significant inasmuch as "Virginia contract law recognizes a cause of action for failure to exercise contractual discretion in good faith."  Virginia Vermiculite, Ltd. v. W.R. Grace & Co., 144 F. Supp. 2d 558, 606 (W.D. Va. 2001); see also Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing Charles E. Brauer Co., v. NationsBank of Va., 466 S.E.2d 382, 386 (Va. 1996)) (listing elements for breach of implied covenant of good faith and fair dealing claim).  As noted above, however, West Virginia recognizes no such claim, and claims for breach of the implied covenant must be predicated on a breach of contract.  See Highmark, 655 S.E.2d at 514.

Because BAC was within its contractual rights in foreclosing on the property when plaintiffs defaulted, and because the implied covenant "cannot give contracting parties rights which are inconsistent with those set out in the contract," Barn-Chestnut, 457 S.E.2d at 509, plaintiffs' claim fails as a matter of law.  Count IV is therefore dismissed.

39

D.   Count V: Illegal Debt Collection -- BAC

In Count V, plaintiffs claim that defendant BAC violated the West Virginia Consumer Credit and Protection Act ("WVCCPA").   See W. Va. Code § 46A-2-122, et. seq.   The WVCCPA provides, in relevant part, that:

> [n]o debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> (a)   The use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader . . . .

West Virginia Code § 46A-2-125 (the "Abuse Provision").   The West Virginia Supreme Court of Appeals has indicated that the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action.   As suggested by the court in State v. Custom Pools, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose."   Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

McGraw v. Scott Runyan Pontiac-Buick, Inc., 461 S.E.2d 516, 523 (W. Va. 1995) (internal citations omitted).

        In Count V, plaintiffs claim that defendant BAC "unreasonably abused" them "[b]y routinely insulting Plaintiffs about their struggle and circumstance in the court [sic] of servicing the mortgage loan at issue . . . ." (Second Amend. Compl. ¶ 58). A BAC representative allegedly told plaintiffs that "West Virginians like to have yard sales, so why don't you have a yard sale to make up the difference?" and also inquired, "Why did you buy the place if you can't make the payments?" (See id. ¶¶ 20-21). BAC strenuously denies that these statements were ever made, and contends that even if made, they are not so "profane, obscene, or unreasonably abusive" such that they constituted a viable claim under West Virginia Code § 46A-2-125(b). (Def.'s Mem. 11-12).

        Defendant's attempt to characterize these statements as unactionable "preclaims assistance" is unavailing. BAC relies heavily on the unpublished decision in Seals v. Nat'l Student Loan Program, No. 5:02-cv-101 (N.D. W. Va. October 8, 2003). In that case, plaintiff alleged that defendants made statements such as "I can't believe you can't get a job," and

41

that plaintiff should "try to help himself" by suggesting that
he take a job at "McDonald's or Burger King."  <u>Id.</u> at *16, 18-
19.  The court found that "these statements are not sufficiently
'profane,' 'obscene,' or 'unreasonably abusive' in nature to
make [§ 46A-2-125(a)] applicable."  <u>Id.</u> at *16-18.  Further, the
court found that defendant's suggestion "that plaintiff work at
McDonald's or Burger King" was "likely made as a form of
'preclaims assistance,' which allows a lender to counsel the
borrower on how to avoid default."  <u>Id.</u> at *18.  Unlike <u>Seals</u>,
the annoying comments at issue in Count V can hardly be said to
be the product of a desire to render preclaims assistance.

        In any event, the remarks at issue in this case are
neither "profane" nor "obscene."  While the statement that "West
Virginians like to have yard sales, so why don't you have a yard
sale to make up the difference?" may be considered as
condescending, it is not actionable as unreasonably abusive.
Neither is the comment asking "Why did you buy the place if you
can't make the payments?"  Accordingly, Count V is dismissed.

IV.   Conclusion

In sum, the court finds that Counts IV and V must be dismissed for failure to state a claim, while Counts I and II (fraud), as well as Count III (unconscionable contract) survive as against the diverse defendants.   Counts VI, VII, and VIII remain as to BAC.

Based on the foregoing reasons, the court ORDERS as follows:

1.   That plaintiffs' motion to remand be, and it hereby is, denied;

2.   That defendant Zamow's motion to dismiss be, and it hereby is, granted;

3.   That defendants Countrywide, BAC, and Mellon's motion to dismiss be, and it hereby is, denied with respect to Counts I and II; and

4.   That defendant BAC's motion to dismiss be, and it hereby is, granted with respect to Counts IV and V, which are dismissed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

Enter: February 2, 2012

John T. Copenhaver, Jr.
United States District Judge

43